909 A.2d 1224

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jeremiah D. OSTROSKY, Appellee.**

Supreme Court of Pennsylvania.

Submitted Feb. 28, 2006.

Decided Nov. 22, 2006.

438

Michael Wayne Streily, Esq., Robert A. Willig, Esq., Pittsburgh, for Commonwealth of Pennsylvania.

Samuel John Cordes, Esq., Ogg, Cordes, Murphy & Ignelzi, L.L.P., Pittsburgh, for Jeremiah D. Ostrosky.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

### OPINION

Justice BAER.

We granted review in this case to determine whether the Superior Court erred in reversing the trial court's judgment of sentence for Appellee Jeremiah Ostrosky's conviction of the offense of retaliation against a witness or victim, 18 Pa.C.S. § 4953(a) (hereinafter "retaliation statute").[1] The Superior Court concluded that the evidence presented by the Commonwealth was insufficient as a matter of law to sustain Ostrosky's conviction where, as here, Ostrosky, on one occasion, verbally threatened James and Andrea Foster, who were previously crime-victims of Ostrosky. For the reasons that follow, we affirm the Superior Court.

---

1. 18 Pa.C.S. § 4953(a), entitled "retaliation against a witness or victim," provides as follows:

    (a) **Offense defined.**—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim, or a party in a civil matter.

Sometime in the spring or summer of 2002, Ostrosky was ordered to pay restitution for damages that resulted when the Foster's vehicle was vandalized.[2] The damages to their vehicle totaled approximately $2,200. Thereafter, on September 20, 2002, Ostrosky, who was 18 years old at the time, encountered Mr. Foster at a Glassport Area High School football game. Mr. and Mrs. Foster were both present at the game and Mr. Foster was serving as a parent-chaperone to the high school band, as his son was a band member. The encounter began when Mr. Foster observed Ostrosky talking to band members during the time the high school football game was taking place. Mr. Foster approached Ostrosky and explained to him that band members are not permitted to talk during game time and that he, Ostrosky, should move on. After making a smart remark to Mr. Foster, Ostrosky complied with Mr. Foster's request and left the area where the band was assembled.

Approximately one hour later, Ostrosky returned to the band area and approached Mr. Foster. Mr. Foster saw Ostrosky, but said nothing to him at that time; Mr. Foster then left to use the restroom. When Mr. Foster returned from using the restroom, Ostrosky approached him again and began talking about the previous vandalism incident. Specifically, Ostrosky stated that he blamed Mr. Foster for his getting into trouble and said it was Mr. Foster's fault that he was required to pay $2,000 in restitution. Ostrosky then became belligerent and called Mr. Foster a "fat f——." Notes of Testimony, 6/16/03, (N.T.), at 18. He told Mr. Foster that he "should take [Mr. Foster's] fat ass out in the field and beat [him] up." *Id.*

**2.** The record is not clear as to whether or not Ostrosky was convicted in connection with the vandalism incident. What the record does indicate is that sometime after the incident occurred, Ostrosky appeared before a district magistrate accused in the vandalism incident and was ordered to pay restitution to the Fosters in connection therewith in what was apparently the informal equivalent of ARD. Mr. and Mrs. Foster did not appear as witnesses in that proceeding. For purposes of this proceeding, however, there is no dispute that the Fosters were "victims" of Ostrosky within the meaning of the retaliation statute.

At that point, Mr. Foster was not concerned with Ostrosky's comments and, in fact, found them to be funny. When Mr. Foster began laughing, Ostrosky told him "[y]ou ain't going to find this funny when I am slapping your wife around and ass f——ing her." N.T. at 19. Mr. Foster no longer found Ostrosky funny and became concerned. He began looking around for help. Other people began walking up to Ostrosky and Mr. Foster, who were obviously involved in a verbal confrontation, and Mr. Foster asked that someone call the police. Mr. Foster was concerned particularly because of Ostrosky's threat directed at Mrs. Foster as he was unsure if Ostrosky would attempt to carry out such threat.[3] Ostrosky then became louder and continued yelling at Mr. Foster "in [his] face." N.T. at 21. The incident ended when Mr. Foster walked away. At that time, the police arrived and confronted Ostrosky, who was arrested.[4]

Based on the foregoing incident, Ostrosky was charged with one count of violating the retaliation statute, 18 Pa.C.S. § 4953; two counts of terroristic threats, 18 Pa.C.S. § 2706; one count of disorderly conduct, 18 Pa.C.S. § 5503(a)(1–4); and two counts of harassment and stalking, 18 Pa.C.S. § 2709. Regarding the Commonwealth's allegation that Ostrosky violated the retaliation statute, the Commonwealth alleged that Ostrosky harmed the Fosters by making terroristic threats, engaging in disorderly conduct and harassing and stalking them, all unlawful acts, with the intent to retaliate against

3. Mrs. Foster was not present when Ostrosky made the comment, but observed from a distance her husband and Ostrosky arguing. She was told about the comment by someone who overheard it. She testified that she felt intimidated after she was told of the comment.

4. The foregoing factual recitation is based upon the trial testimony of Mr. and Mrs. Foster. At trial, Ostrosky testified contrary to the Foster's testimony; however, the trial court's findings and conclusions were consistent with the Foster's testimony and the court specifically found Ostrosky's testimony incredible. *See* Notes of Testimony, 6/17/03, at 51. The trial court is, of course, the fact-finder, *see Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 666 (2002), and the Commonwealth, as the verdict winner, is entitled to have the facts construed in the light most favorable to it. *See Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 516–517 (2005).

them for their role in the vandalism charges that were brought against him.

Following a two-day bench trial, the trial court convicted Ostrosky of all the charges. Regarding the charges pursuant to the retaliation statute, as is relevant here, the court specifically stated the following:

THE COURT: After reviewing my notes and, of course, listening to the testimony and weighing the credibility of the witnesses I have reached the following decision: That is that the Commonwealth has proven beyond a reasonable doubt that on September 20, 2002 Jeremiah Ostrosky did harm Jim Foster by unlawful action, including the act of threatening to assault him and his wife in retaliation for the Fosters being ... the victim of a crime for which Mr. Ostrosky eventually paid restitution....

Notes of Testimony, 6/17/03, at 50.

On August 28, 2003, the trial court sentenced Ostrosky to two concurrent terms of 7 to 23 months' incarceration with permission for alternative housing and work release, to be followed by one year of probation. These sentences applied to the counts charging a violation of the retaliation statute and terroristic threats. No further sentence was imposed on the remaining counts. Thereafter, Ostrosky filed post-trial motions, which the trial court denied. Ostrosky filed a timely notice of appeal to the Superior Court alleging, *inter alia,* that the evidence presented by the Commonwealth was insufficient to sustain Ostrosky's conviction pursuant to the retaliation statute.

On appeal to the Superior Court, Ostrosky argued that the trial court erred in convicting him of violating the retaliation statute where, as here, the Commonwealth failed to demonstrate that the Fosters were harmed by his unlawful acts. Specifically, Ostrosky asserted that his conduct, which at most amounted to a single threat, was not sufficient for a conviction because the retaliation statute otherwise contemplates actual harm by an unlawful act or repeated threatening conduct in order to sustain a conviction.

The Superior Court agreed with Ostrosky, finding that the evidence was insufficient to sustain his conviction of violating the retaliation statute. Accordingly, the Superior Court reversed the trial court's judgment of sentence in this regard.[5] *See Commonwealth v. Ostrosky,* 866 A.2d 423 (Pa.Super.2005). The court analyzed the language of the retaliation statute, which, as noted previously, provides as follows:

> **(a) Offense defined.**—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim, or a party in a civil matter.

18 Pa.C.S. § 4953(a). Upon examining the provision's language, the court noted that, by its very terms, in order to obtain a conviction, assuming an intent to retaliate, the Commonwealth can sustain its burden by proving any one of the following three scenarios: (1) that the defendant harmed another by any unlawful act; or (2) that the defendant engaged in a course of conduct which threatened another; or (3) that the defendant repeatedly committed acts which threaten another. The Superior Court then observed that in this case, the Commonwealth alleged only that Ostrosky violated the statute pursuant to the first of the foregoing scenarios, namely, that, with the intent to retaliate against the Fosters, he harmed the Fosters by an unlawful act.[6]

The court initially focused on the term "harm" and noted that the legislature did not define the term for purposes of the statute. Thus, as is required by the Statutory Construction Act, 1 Pa.C.S. § 1903(a) (words and phrases shall be construed according to their common and approved usage), the court

**5.** The court noted that because the sentences imposed for Ostrosky's convictions of the retaliation statute and making terroristic threats were concurrent, there was no need to remand to the trial court for re-sentencing, as no actual reduction in Ostrosky's sentence would result from the court's reversal of his conviction pursuant to the retaliation statute.

**6.** Ostrosky did not challenge the trial court's conclusion that he possessed the requisite intent to retaliate against the Fosters. Rather, as discussed, his arguments focused solely on whether a single threat is sufficient to sustain a conviction pursuant to the retaliation statute.

examined the common dictionary definition of harm, declaring that the term as defined in various dictionary sources encompasses a broad range of injury, loss, or damage. The court noted in this regard:

According to its dictionary definition, the word "harm" constitutes a broad range of wrongs. For example, one dictionary defines harm as, *inter alia*, physical or mental damage, mischief, hurt, disservice, an act or instance of injury, or a material and tangible detriment or loss to a person. Webster's Third New International Dictionary 1034 (1966). Black's Law Dictionary provides the following expansive definition of the word: "Injury, loss, damage; material or tangible detriment." Black's Law Dictionary 734 (8th ed.2004). Thus, harm can encompass a broad spectrum of physical, psychological, social, and financial injury or detriment.

*Id.* at 428.

In examining whether the Fosters suffered harm based upon Ostrosky's comments, the court noted that their testimony did not indicate that they suffered any objective harm beyond their having been subjected to the threat itself. The court observed that while Mr. Foster became "concerned" following Ostrosky's final comment in relation to Mrs. Foster and that Mrs. Foster felt "intimidated" by the comment when told of it by a third party, their testimony, otherwise, did not demonstrate harm beyond the feelings associated with the single isolated threat itself. The court, referencing various sources for the notion that feelings of intimidation are the equivalent of feeling threatened, noted the following:

Feelings of intimidation, as testified to by Mrs. Foster, fall under the rubric of feeling threatened. *See e.g.*, William C. Burton, Burton's Legal Thesaurus 512 (3d ed.1998). Similarly, Mr. Foster, although first finding the encounter funny, later felt threatened such that he started looking around for help and told someone to call the police. In other words, there was no evidence indicating that the victims experienced anything other than the feeling of being threatened during this one, isolated incident. The fear and intimi-

dation felt by the victims are, at their core, feelings that arise from being threatened. *See id.* (listing synonyms for threat and threatening including, *inter alia,* alarm, foreboding, intimidation); Webster's Third New International Dictionary 2382 (1966) (describing words associated with "threat" such as, *inter alia,* coercion, annoyance, harassment, persecution, and defining, threat as, *inter alia,* "expression of intention to inflict loss or harm on another by illegal means and esp[ecially] by means involving coercion or duress . . .").

*Id.* at 429 n. 2. Thus, the court concluded that the Fosters did not suffer any type of harm independent of the threat itself.

Having so concluded, the court analyzed whether such a threat alone, which is unlawful, could satisfy the harm element of the retaliation statute. Ultimately, the court concluded that Ostrosky's threat standing alone did not satisfy the required harm given the statute as a whole, its grammatical context, and its history. Specifically, the court noted that the current version of the retaliation statute resulted from an amendment of the prior version, which became effective on December 20, 2000. The prior version of the statute simply provided the following:

(a) **Offense defined.** A person commits an offense if he harms another by any unlawful act in retaliation for anything lawfully done in the capacity of witness or victim.

18 Pa.C.S. § 4953 (enacted Dec. 4, 1980, P.L. 1097, No. 187, § 4). The current version of the provision, as noted previously, contains the same language as the prior version set forth above, with the addition of the language specifying that, a violation of the statute occurs where a person "engages in a course of conduct or repeatedly commits acts which threaten another," in retaliation for anything lawfully done in the capacity of witness or victim. Thus, the Superior Court concluded that because Ostrosky's conduct represented a single instance of verbal threat, and the statute contemplates that only multiple instances of threats constitute a violation, Ostrosky's conduct was insufficient for purposes of violating the current version of the retaliation statute.

In further support of its conclusion that the legislature did not intend to punish a single threat, the court applied the maxim, *expression unius est exclusio alterius,* and held that because the legislature specifically expressed that multiple threats were required by the retaliation statute, the legislature could not have intended to punish a single threat, such that occurred in this case.[7] The court also observed that penal statutes, such as the retaliation statute, should be strictly construed against the Commonwealth and that such maxim likewise militated in favor of its conclusion that Ostrosky's conduct was not intended to be punished by the legislature. The court held:

> Thus, "harm" cannot include a single instance of threats as occurred in the case presently before us. In other words, we doubt if the legislature intended to punish, under this statute, one incident of threatening conduct, since it amended the statute to indicate that it intends to punish threatening conduct that is repeated in nature. If we strictly construe the statute, as we are required to do when interpreting criminal statutes, and if we apply the *expression unius* maxim, we must conclude that one instance of threatening conduct is insufficient to establish the commission of this crime.

*Ostrosky,* 866 A.2d at 430.

The Commonwealth sought further appeal to this Court and we granted allocatur to address whether the Superior Court erred in concluding that the evidence presented was insufficient as a matter of law to satisfy the requirements of the retaliation statute. The issue as framed by the Commonwealth is whether the Superior Court erred in holding that the legislature intended to criminalize only repeated threatening behavior under the retaliation statute. As the

---

7. *Expressio unius est exclusion alterius* is a canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative. *See* BLACK'S LAW DICTIONARY 265 (2d Pocket ed.2001); *see also L.S. ex rel. A.S. v. Eschbach,* 583 Pa. 47, 874 A.2d 1150, 1156 (2005) (noting that the principle of *expressio unius est exclusio alterius* means the express mention of one meaning in a statute implies the exclusion of other meanings).

question is one of statutory interpretation, a purely legal issue, this Court's standard of review is *de novo* and our scope of review is plenary. *See Touloumes v. E.S.C., Inc.,* 587 Pa. 287, 899 A.2d 343, 2006 WL 1674824, at *2 n. 4 (2006); *see also In re Carroll,* 586 Pa. 624, 896 A.2d 566, 573 (2006).

The Commonwealth argues that the Superior Court erred in interpreting the retaliation statute as criminalizing only repeated threatening behavior.[8]  Specifically, it asserts that the statutory language is clear and free from ambiguity and allows for conviction where, with the intent to retaliate, a person harms another, in this case a victim, by an unlawful act.  The Commonwealth claims that here the plain and clear language of the retaliation statute was met when it proved that Ostrosky committed the unlawful acts of terroristic threats, disorderly conduct, and harassment.  Moreover, it argues that there is no doubt, as found by the trial court, that these crimes were committed in retaliation for what Ostrosky perceived to be Mr. Foster's role in the prior vandalism case.

Regarding the element of "harm" required by the retaliation statute, the Commonwealth maintains that a crime is harmful in and of itself, which is why the legislature has prohibited hundreds of actions and called them crimes.  It notes that not every harmful act is a crime, but that every crime is a harmful act.  Thus, the Commonwealth maintains that once the unlawful acts of terroristic threats, disorderly conduct, and harassment were proven, harm, *per se,* resulted.

Additionally, the Commonwealth asserts that the 2000 amendment to the retaliation statute merely clarified that a course of conduct and/or repeated threatening behavior, in addition to a single unlawful act are expressly prohibited under the statute.  The Commonwealth maintains that by the

8.  The Commonwealth notes that while it could be argued that Ostrosky's behavior constituted a course of conduct in that several events occurred over a period of time, it did not charge Ostrosky under such a theory.  *See* Brief for Appellant at 12, n. 2. Thus, the only theory on which the Commonwealth proceeded below and before this Court on appeal is that, with the intent to retaliate, Ostrosky harmed the Fosters by the unlawful acts of terroristic threats, disorderly conduct, and harassment.

addition of this language, the legislature in no way sought to decriminalize a single threatening act.

In the alternative, the Commonwealth argues that even if harm beyond the unlawful criminal act itself is required by the retaliation statute, here it met its burden in this regard by showing that the Fosters became concerned and intimidated, which is equivalent to suffering psychological distress, because of Ostrosky's unlawful actions. The Commonwealth maintains that such feelings, while associated with the threat, sufficiently satisfy the harm element.

Ostrosky responds to the Commonwealth's arguments, noting that the plain language of the first portion of the retaliation statute requires the Commonwealth to prove two things. First, the Commonwealth must demonstrate that the defendant harmed another. Second, the Commonwealth must show that such harm was the result of an unlawful act. Ostrosky argues the Commonwealth seeks to conflate the two separate elements of "harm" and "by any unlawful act" through its argument that an unlawful act is always harmful and therefore proof that a defendant committed an unlawful act carries with it proof that the defendant harmed the victim. Ostrosky notes that if the legislature intended that result, it could have simply indicated that "a defendant is guilty if he commits an unlawful act directed at a witness or victim." Instead, the legislature very clearly provided in the first portion of the retaliation statute that for a person to commit an offense, there must be both "harm" and "any unlawful act." Ostrosky continues that in a separate phrase after the conjunction "or" the statute provides that a perpetrator can also violate this provision by engaging in a course of conduct or repeatedly committing acts which threaten another. Thus, Ostrosky concludes that to violate the statute, the Commonwealth must prove either that Fosters suffered specific identifiable harm as a result of an unlawful act or were the subject of repeated threats.

In addressing the Commonwealth's alternative argument that it met any required showing of harm independent of the single threat by demonstrating that the Fosters were concerned and intimidated by the threat, Ostrosky asserts that

this is just another way of arguing that the threat itself is sufficient to show harm. Ostrosky notes that the Fosters did not claim to be harmed independent of the feelings they associated with feeling threatened. This, Ostrosky argues, is insufficient because, again, it would permit the Commonwealth to satisfy its burden of demonstrating harm by reference to the single threat itself.

In looking at the language of the retaliation statute and determining what is required for a violation of the provision, we begin by noting the bedrock principle of statutory construction, acknowledged by both parties, that when interpreting the language of a statute, our goal is to ascertain the intention of the legislature. 1 Pa.C.S. § 1921(a); *see Craley v. State Farm Fire and Casualty Co.*, 586 Pa. 484, 895 A.2d 530, 539 (2006). Every statute shall be construed, if possible, to give effect to all its provisions. *Id.* The General Assembly, thus, intends that the entire statute to be effective and certain. 1 Pa.C.S. § 1922(2). When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Koken v. Reliance Ins. Co.*, 586 Pa. 269, 893 A.2d 70, 81 (2006).

The plain language of the retaliation statute relevant to this case provides, "[a] person commits an offense if he harms another by any unlawful act." From this language, it is clear that in order to satisfy the requirements of the provision, two things are necessary. Specifically, it must be shown that a person, 1) caused harm, and that, 2) such harm resulted from an unlawful act. The question at issue here is whether the harm that must be shown can be satisfied exclusively by proof of the unlawful act itself, in this case a single threat. As noted, the Commonwealth advocates that proof of the unlawful act alone, here the single threat, is sufficient to demonstrate harm because all unlawful acts, i.e., crimes, are harmful. We find such construction at best strained and disagree.

The Commonwealth's claim that the element of harm can be satisfied merely by showing that an unlawful act was committed does violence to the plain language of the provision

which requires *both* a showing of harm and the performance of an unlawful act. Such a construction would negate the need for a specific showing of harm, which is clearly contrary to language contemplated by the legislature. As noted by Ostrosky, such a construction would make the legislature's use of the word harm in the statute mere surplusage as proof of the unlawful act itself would, *per se,* be considered harmful. The legislature, however, is presumed not to intend any statutory language to exist as mere surplusage and, accordingly, courts must construe a statute so as to give effect to every word. *See* 1 Pa.C.S. § 1921(a); *Holland v. Marcy,* 584 Pa. 195, 883 A.2d 449, 456 (2005) (noting that in construing a statute, the courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage).[9]

We believe this precept would be violated even more so in this case, which implicates the unlawful act of a threat, given the legislature's 2000 amendment of the retaliation statute. In the 2000 amendment, the legislature very clearly amended the law to specify that a violation of the statute occurs where a person engages in a course of conduct or *repeatedly* commits acts which threaten another in retaliation. Under the Commonwealth's reading, however, such language, at most, is redundant of the original language because according to the Commonwealth's theory, under the prior language of the provision, a single unlawful act in the form of a threat would

---

**9.** The dissent appears to read the language of the retaliation statute as meaning that, "a defendant is guilty if he commits an unlawful act directed at a witness or victim" and that a distinct showing of harm would not be required where, as in this case, the unlawful act is directed at the victim. The dissent, however, would require a distinct showing of harm in other instances where an unlawful act is committed, but is not directly lodged against a witness or victim. This divergent analysis, however, is not warranted by the clear language of the statute which, in all cases involving an unlawful act, requires a distinct showing of harm.

Contrary to the dissent's assertion, this is not to say that one could never show that harm, which we believe the Superior Court appropriately defined, *see Commonwealth v. Ostrosky,* 866 A.2d 423, 428 (Pa.Super.2005); *see also supra* at *slip op.* at 6, resulted from a single threat. Rather, as noted, at issue here is whether, in all cases, a distinct showing in this regard is required. Again, we hold that it is.

be actionable; certainly then, multiple threats would likewise be actionable. Again, this would render the legislative amendment superfluous.

■ Moreover, in this regard, we agree with the Superior Court that the legislature's 2000 amendment of the retaliation statute clearly signaled its intent that in order for threatening behavior to be actionable, it must be recurrent. While there is no doubt that a single threat is sufficient to satisfy the requirements of other criminal provisions such as the terroristic threats statute charged in this case,[10] in order to satisfy the specific requirements of the retaliation statute, multiple threats are necessary.

■ We likewise disagree with the Commonwealth's alternative claim that it independently demonstrated harm in relation to Ostrosky's threat sufficient to sustain its burden of proof. As the Superior Court and Ostrosky observe, such a claim is, in essence, just another way of asserting that harm, *per se*, results from the commission of an unlawful act. The Fosters' testified to feelings of concern and intimidation that resulted from Ostrosky's threat are feelings that one would expect to accompany any threat that was made. Again, if such a threat and its concomitant resulting feelings were sufficient to satisfy the retaliation statute, the requirement of some objective type of harm as well as the language requiring multiple threats would be unnecessary.

Based on the foregoing, we conclude that the Superior Court properly reversed Ostrosky's conviction for violating the retaliation statute. Accordingly, its decision is affirmed.

Chief Justice CAPPY, and Justice SAYLOR and EAKIN and Justice BALDWIN join the opinion.

Justice CASTILLE files a dissenting opinion in which Justice NEWMAN joins.

10. The terroristic threats statute, 18 Pa.C.S. § 2706(a), provides in part:
**(a) Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
(1) commit any crime of violence with intent to terrorize another.

452

Justice CASTILLE, dissenting.

In affirming the divided Superior Court panel decision below,[1] the Majority Opinion reads the retaliation statute as if it were intended to embody a sort of "one-free-dog-bite" approach to unlawful verbal threats intended to intimidate victims or witnesses in a prior action. As a matter of basic, plain language, statutory construction, I do not believe the statute provides such a free pass. Hence, I respectfully dissent.

The retaliation statute provides as follows:

**(a) Offense defined.**—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S. § 4953(a). As the Majority notes, appellee was charged under the first part of this disjunctive definition, *i.e.,* he was accused of harming another by an unlawful act with an intent to retaliate. I agree with the Majority that this clause requires the Commonwealth to establish that a person (1) caused harm to another; (2) that such harm resulted from an unlawful act; and (3) that such harm is in retaliation against a witness.

The Majority holds, as a matter of law, that the extended verbal threats appellee leveled against the Fosters are insufficient to prove guilt under the first clause of Section 4953(a). The Majority interprets the statute as requiring that, where unlawful verbal threats are at issue, a defendant must engage in such conduct on multiple discrete occasions before he may be prosecuted for retaliation. In the Majority's view, a single occasion involving unlawful threats cannot satisfy the first clause of Section 4953(a) because, if it did, the showing of "harm" required by the clause would be rendered mere surplusage. Majority op. at 449–50, 907 A.2d at 1231–32. But the Majority reads a limitation into the statute which is not

1. Judge Bender authored the majority decision below, joined by Judge Panella. On the question currently before the Court, Judge Popovich dissented.

expressed in its plain language, and which contradicts practical experience. The first clause of the statute speaks only to an unlawful act which harms another, while the second clause is not limited to unlawful acts. The distinction is significant, obviously deliberate, and I believe, when properly construed, it encompasses the variety of real-world conduct that may operate to intimidate a witness or a victim.

Reading the statute as a whole, it is apparent that a *lawful* act committed by a defendant might be threatening and thereby constitute a violation of the retaliation statute if committed repeatedly—eventually making otherwise "lawful" conduct unlawful. *See* 18 Pa.C.S. § 2709(a) (punishing certain types of repeated communication or acts as harassment); *Commonwealth v. Leach*, 729 A.2d 608, 611–12 (Pa.Super.1999) ("The elements of stalking are not established until the occurrence of a second prohibited act and any additional acts extend the course of conduct."). Thus, for example, the retaliation statute may not have been implicated if appellee called the Fosters at home once and left a message conveying that he was upset that he was ordered to pay restitution for vandalizing the Fosters' vehicle. But if appellant called the Fosters repeatedly, including multiple times a day and in the middle of the night, the conduct might rise to the level of conduct prohibited by the second clause of Section 4953(a).

On the other hand, some acts, even if committed only once, are unlawful and sufficient in themselves to be deemed harmful, at least where there is a specific individual who is the victim of the unlawful act (indeed, that is why the conduct is criminalized). Not all unlawful acts have specific individuals as victims; a criminal act can be committed against public property, for example, or against the public generally. Here, appellee was convicted of making terroristic threats *against the Fosters*, arising out of a one-time (albeit prolonged) incident, which constituted an *unlawful* act even though but one confrontation was involved. *See* 18 Pa.C.S. § 2706(a)(1). Because retaliation may be accomplished through a variety of methods, and lawful conduct might not become threatening or illegal without it occurring multiple times, it is clear why the

General Assembly saw a need to address retaliation commit-
ted through both a single unlawful act and lawful acts that
become illegal when committed repeatedly. In my view, the
first clause of the statute plainly captures the unlawful terror-
istic threats made by appellee in the case *sub judice,* threats
which were directed at individuals with whom he had had a
prior dispute.

Given my understanding of the language of the statute, and
the real world concerns with which it grapples, I necessarily,
but respectfully, disagree with the Majority's conclusion that
the "harm" element in the first clause of the statute would be
rendered surplusage if the fact that the predicate act was
unlawful supplied the harm. The Majority accurately summa-
rizes the Commonwealth's argument on this point as follows:

> Regarding the element of "harm" required by the retalia-
> tion statute, the Commonwealth maintains that a crime is
> harmful in and of itself, which is why the legislature has
> prohibited hundreds of actions and called them crimes. It
> notes that not every harmful act is a crime, but that every
> crime is a harmful act. Thus, the Commonwealth maintains
> that once the unlawful acts of terroristic threats, disorderly
> conduct, and harassment were proven, harm, *per se,* result-
> ed.

> Additionally, the Commonwealth asserts that the 2000
> amendment to the retaliation statute merely clarified that a
> course of conduct and/or repeated threatening behavior, in
> addition to a single unlawful act are expressly prohibited
> under the statute. The Commonwealth maintains that by
> the addition of this language, the legislature in no way
> sought to decriminalize a single threatening act.

Majority op. at 447–48, 909 A.2d at 1230. In my view, the
Commonwealth's reading comports with the plain language of
the statute, and avoids what would otherwise be an absurd and
unreasonable reading.

It bears reiteration that not all crimes involve harm to a
person that the retaliation statute is meant to protect. From
this fact, it logically follows that, in instances where the

retaliation victim is not the victim of the predicate unlawful act, the statute would require a distinct showing of harm to the retaliation victim. If the defendant breaks the speeding limit while pursuing his victim on the highway, for example, it does not necessarily follow that the defendant's speeding violation caused harm to the person he was chasing. An argument might even be made that the harm element is not automatically established if the predicate unlawful acts involved harassing or brutalizing friends or family of the person who is the alleged victim of retaliation. But where the predicate act is criminal in and of itself (as was the case here), and where the victim of the predicate act is the same as the retaliation victim (as here), I believe that, under the plain language of the first clause of Section 4953(a) statute, harm has been proven.

Since appellee committed an unlawful act against the Fosters in retaliation for their role in securing the restitution order instituted against him, I would reinstate his conviction for retaliation.

Justice NEWMAN joins this opinion.