J-S41026-24          2025 PA Super 57

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MONTE LOWREY | : | |
| | : | |
| Appellant | : | No. 1297 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 3, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001289-2023

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

OPINION BY KING, J.:                        **FILED MARCH 12, 2025**

Appellant, Monte Lowrey, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his bench trial convictions for driving with a suspended license and the summary offense of failing to use a turn signal.[1] For the following reasons, we vacate the judgment of sentence.

The relevant facts and procedural history of this case are as follows. On October 20, 2022, at approximately 4:00 a.m., Richland Township Police Officer Daniel Carr was on duty in a marked patrol vehicle. Officer Carr had stationed his vehicle in the parking lot of a Wawa store on Route 309 in Richland Township. From this location, Officer Carr observed a silver Saturn Ion pull into the lot and park. Later, the Saturn backed out of its parking spot

_____

[1] 75 Pa.C.S.A. §§ 1543(b)(1)(i) and 3334(a), respectively.

and drove towards the exit of the parking lot leading to Route 309. As the Saturn turned right onto Route 309, Officer Carr observed that the driver did not use a turn signal.

Officer Carr followed the Saturn. Based upon the driver's failure to use a turn signal, Officer Carr initiated a traffic stop.[2] (**See** N.T. Suppression Hearing, 1/23/24, at 11). The Saturn eventually pulled over on Hickory Drive. Officer Carr obtained identification from the driver, who was Appellant. Subsequent investigation revealed that Appellant was driving with a suspended license.

On April 4, 2023, the Commonwealth filed a criminal information charging Appellant with two violations of the Motor Vehicle Code ("MVC"): driving with a suspended license and failing to use a turn signal.[3] On December 29, 2023, Appellant filed an omnibus pretrial motion seeking to suppress all evidence obtained because of the vehicle stop. In it, Appellant argued that "law enforcement personnel did not have reasonable suspicion or probable cause to stop and detain him." (Suppression Motion, filed 12/29/23,

---

[2] Officer Carr testified that there is a stop sign at the exit to the parking lot, and Appellant "basically rolled through the stop sign onto [Route] 309." (N.T. Suppression Hearing at 10). The officer, however, did not initiate the traffic stop on this basis. Rather, Officer Carr unequivocally testified that he initiated the traffic stop due to Appellant's failure to use a turn signal.

[3] The information contained an additional count for possession of drug paraphernalia. Nevertheless, the Commonwealth sought leave to *nol pros* this charge at the beginning of the suppression hearing. (**See** Suppression Hearing at 6).

at ¶24). The court conducted a suppression hearing on January 23, 2024. At the conclusion of the hearing, the court denied Appellant's motion. Appellant immediately proceeded to a bench trial, and the court convicted Appellant of driving with a suspended license and failing to use a turn signal. On April 3, 2024, the court sentenced Appellant to sixty (60) days of restrictive probation and a $500.00 fine.

Appellant timely filed a notice of appeal on May 3, 2024. On May 6, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on May 21, 2024.

Appellant now raises one issue on appeal:

> The trial court erred in denying Appellant's omnibus pretrial motion to suppress because the officer did not have probable cause to conduct [a] traffic stop of Appellant's vehicle.

(Appellant's Brief at i).

On appeal, Appellant contends that a police officer must possess probable cause to effectuate a traffic stop based upon the non-investigable offense of failing to use a turn signal. Further, relying upon the language of Section 3334(a), Appellant asserts that he needed to be driving on a "roadway" to have violated the statute governing the use of turn signals. Appellant insists, however, that a parking lot is considered a "trafficway" rather than a roadway for purposes of the MVC. Because Appellant was driving upon a trafficway, and not a roadway, when he began his turn onto Route

309, Appellant maintains he did not violate Section 3334(a). Appellant concludes that the officer did not possess probable cause to support the traffic stop at issue, and the court should have suppressed all evidence obtained during the stop. We agree.

The following principles inform this Court's review of a suppression ruling:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Phillips*, 327 A.3d 1236, 1241 (Pa.Super. 2024) (quoting *Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa.Super. 2021)).

Regarding questions of statutory interpretation:

> Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary. In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.

> Generally, a statute's plain language provides the best indication of legislative intent. We will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to a result that is absurd, impossible of execution or unreasonable. Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning.

*Commonwealth v. Watts*, 283 A.3d 1252, 1255-56 (Pa.Super. 2022) (internal citations and quotation marks omitted).

Our analysis of the quantum of cause required for a traffic stop begins with the MVC, which provides:

**§ 6308. Investigation by police officers**

\* \* \*

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added).

"[D]espite subsection 6308(b)'s reasonable suspicion standard, some offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop." *Commonwealth v. Ibrahim*, 127 A.3d 819, 823 (Pa.Super. 2015), *appeal denied*, 635 Pa. 771, 138 A.3d 3 (2016). "For a stop based on the observed violation of the Vehicle

Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa.Super. 2017). ***See also Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa.Super. 2010), *appeal denied*, 611 Pa. 650, 25 A.3d 327 (2011) (stating mere reasonable suspicion will not justify vehicle stop when driver's detention cannot serve investigatory purpose relevant to suspected violation).

Additionally, the MVC governs the use of turn signals as follows:

> **§ 3334.  Turning movements and required signals**
>
> **(a)   General rule.**—**Upon a roadway** no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S.A. § 3334(a) (emphasis added).

The MVC defines the following terms:

> **§ 102.  Definitions**
>
> *       *       *
>
> **"Highway."**  The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.
>
> *       *       *
>
> **"Roadway."**  That portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the

sidewalk, berm or shoulder even though such sidewalk, berm or shoulder is used by pedalcycles. In the event a highway includes two or more separate roadways the term "roadway" refers to each roadway separately but not to all such roadways collectively.

\* \* \*

**"Trafficway."** The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.

75 Pa.C.S.A. § 102. The MVC's provisions relating to the operation of vehicles apply to "highways" unless otherwise stated:

### § 3101. Application of part

**(a) General rule.**—Except as provided in subsection (b), the provisions of this part relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except where a different place is specifically referred to in a particular provision.

**(b) Serious traffic offenses.**—The provisions of section 3345 (relating to meeting or overtaking school bus), Subchapter B of Chapter 37 (relating to serious traffic offenses) and Chapter 38 (relating to driving after imbibing alcohol or utilizing drugs) shall apply upon highways and trafficways throughout this Commonwealth.

75 Pa.C.S.A. § 3101.

Instantly, Officer Carr testified that Appellant did not use a turn signal when making a right-hand turn from the Wawa parking lot onto Route 309. (**See** N.T. Suppression Hearing at 10). Based on Appellant's failure to utilize

a turn signal, Officer Carr initiated a traffic stop on Route 309.[4]  (*Id.* at 11).

The suppression court considered this evidence and determined that Officer

Carr had probable cause to effectuate the stop based upon a violation of

Section 3334(a).  The court emphasized that "the violation of [Section] 3334

occurred when Appellant **exited** the Wawa parking lot to turn onto Route

309," such that "the violation did not occur solely within the parking lot[.]"

(Trial Court Opinion at 7) (emphasis in original).  The court added:

> The plain language of the statute requires activation of a turn signal prior to entering the "traffic stream."  When Appellant turned onto Route 309, he was entering the traffic stream when exiting the parking lot.  Thus, he was required to use his turn signal under [Section] 3334 and Officer Carr had probable cause to stop his vehicle when Appellant failed to do so.

(*Id.*) (internal citation omitted).

Although the court attempted to engage in a plain language

interpretation of Section 3334(a), the court failed to reckon with the statute's

_____

[4] Specifically, Officer Carr testified that he initiated the stop "on Route 309 as it goes through Park Avenue."  (N.T. Suppression Hearing at 11).  Appellant "ended up by turning left onto Park Avenue and eventually came to a stop on Hickory Drive."  (*Id.*)  Appellant utilized a turn signal when turning left onto Park Avenue, but he did not use a signal when turning onto Hickory Drive. (*See id.*)  Thus, Officer Carr testified he observed Appellant fail to use a required turn signal on two separate occasions: "when [the vehicle] was leaving the parking lot and as it turned onto Hickory Drive."  (*Id.*)  Despite this testimony of a second occasion when Appellant failed to signal, we note that Officer Carr had already initiated the traffic stop **before** Appellant's failure to signal the turn onto Hickory Drive.  Thus, this second instance of failing to signal could not have formed the basis for the traffic stop, which was already in progress.  *See Ibrahim, supra*.

mandate that a signal must be used when driving "[u]pon a roadway." **See** 75 Pa.C.S.A. § 3334(a). Here, Appellant entered the traffic stream on Route 309 by turning out of a parking lot. Pursuant to the Section 102 of the MVC, a parking lot is a trafficway. We are bound by this definition. **See Commonwealth v. Smith**, 136 A.3d 170 (Pa.Super. 2016) (reiterating that when General Assembly defines words used in statute, those definitions are binding). **See also Commonwealth v. Proctor**, 625 A.2d 1221 (Pa.Super. 1993), *appeal denied*, 535 Pa. 661, 634 A.2d 223 (1993) (explaining mall parking lot was trafficway for purposes of defendant's driving under influence of alcohol conviction); **Commonwealth v. Cozzone**, 593 A.2d 860, 864 (Pa.Super. 1991) (stating condominium parking lot qualified as trafficway within meaning of MVC statute prohibiting motorists from driving while under influence of alcohol).

Moreover, we are mindful of the general rule stating that MVC provisions relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways **unless** otherwise stated. **See** 75 Pa.C.S.A. § 3101. Section 3334(a), however, expressly refers to actions required while driving upon a roadway. Section 3334(a) makes no mention of trafficways or highways. Based upon the omission of any language in Section 3334(a) requiring the use of turn signals while driving upon trafficways or highways, we disagree with the suppression court's interpretation of the statute. **See Commonwealth v. Ostrosky**, 866 A.2d 423, 430 (Pa.Super. 2005),

*affirmed*, 589 Pa. 437, 909 A.2d 1224 (2006) (explaining: "The maxim, *expressio unius est exclusio alterius*, establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions"). We conclude that Section 3334(a) requires the use of a turn signal only when a vehicle is upon a roadway. ***See Watts, supra***.

Given that Appellant did not violate Section 3334(a) under the circumstances of this case, Officer Carr had no probable cause to initiate the traffic stop of Appellant's vehicle. ***See Harris, supra***; 75 Pa.C.S.A. § 3334(a). Thus, the court should have suppressed the evidence obtained due to the officer's unlawful detention of Appellant. ***See Phillips, supra***. Accordingly, we reverse the suppression order and Appellant's convictions, vacate the judgment of sentence, and dismiss the charges against Appellant.[5]

Judgment of sentence vacated; Appellant is discharged. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2025

---

[5] Consistent with past decisions from this Court, we again ask the legislature to consider reviewing Section 3334 to determine whether, as a matter of public safety, it should amend the statute to mention trafficways.