2026 PA Super 79

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAKIME COOPER | : | |
| | : | |
| Appellant | : | No. 562 EDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered January 23, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004323-2024

BEFORE:  MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 22, 2026**

Appellant, Hakime Cooper, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following her conviction at a bench trial on the charges of retaliation against a witness/victim and harassment.  After our careful review, we affirm.

The relevant facts and procedural history are as follows: On July 3, 2024, the Commonwealth filed an Information charging Appellant with intimidation of a witness/victim, making terroristic threats, retaliation against a witness/victim, recklessly endangering another person, and harassment.[1]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 4952(a)(3), 2706(a)(1), 4953(a), 2705, and 2709(a)(1), respectively.

On November 12, 2024, Appellant, represented by counsel, proceeded to a bench trial.

At trial, Levonda Barnes testified that, during the morning of May 20, 2024, she gave testimony in a trial where she was the victim. N.T., 11/12/24, at 11-12. Specifically, she testified for the Commonwealth, and against Appellant, in courtroom 704 in the Philadelphia County Courthouse. *Id.* After she gave her testimony, at approximately 12:00 p.m., she and her significant other, Darryl McLauren, were standing in the hall directly outside the courtroom, and Mr. McLauren then went to the bathroom, leaving Ms. Barnes standing alone in the hall. *Id.* at 12.

While she was standing outside of the courtroom, she heard Appellant, who was with two other young women, say, "There she goes right there." *Id.* at 13. Ms. Barnes testified Appellant looked directly at her and said, "There's the scary bitch right there." *Id.* She testified Appellant went on a tirade and stated, "You scary bitch. I fucked you up before, and I'm going to fuck you up again. You rat ass bitch--you play with the police--." *Id.*

Ms. Barnes testified that one of the young women with Appellant made statements suggesting that she was even tougher than Appellant. *Id.* at 14. Specifically, one of the women with Appellant said, "I'm not [Appellant], and you don't know me." *Id.* Ms. Barnes testified that Appellant and the two women "kept on calling [her] names, calling [her] B's." *Id.* Ms. Barnes responded to Appellant that she would never hurt Ms. Barnes again, and

Appellant, as well as the other two young women, yelled "obscenities at [Ms. Barnes]." *Id.* Ms. Barnes indicated that Appellant yelled at her until the court crier pushed Appellant and her two friends into the elevator. *Id.* She indicated that the interaction with Appellant lasted "about a minute" until the court crier intervened. *Id.* at 25.

Mr. McLauren confirmed that he was with Ms. Barnes at the courthouse on May 20, 2024, and, after Ms. Barnes gave her testimony against Appellant, they went into the hall. *Id.* at 30-31. Mr. McLauren confirmed he went to the bathroom, thus leaving Ms. Barnes standing alone outside of the courtroom in the hall. *Id.* He testified that, when he exited the bathroom, he heard Appellant say, "Bitch, I fucked you up before, I'm going to fuck you up again." *Id.* at 32. He then heard Appellant say, "You rat ass bitch. You like to play with the cops." *Id.*

Mr. McLauren testified that he believed the interaction between Appellant and Ms. Barnes was about "a minute long," and it ended when the court crier directed Appellant and her two friends into the elevator. *Id.* at 36.

At this point, the Commonwealth rested, and Appellant called Aquilla Shelton as a defense witness. Ms. Shelton testified she was with Appellant at the courthouse on May 20, 2024, to offer Appellant support. *Id.* at 37. She testified that she heard Ms. Barnes say, "You bitch, you're going to get time, and she was going to fuck her up." *Id.* at 39. She testified that Appellant

indicated she didn't have time for this, and Appellant was trying to calm down the situation. *Id.*

At the conclusion of the bench trial, the trial court found Appellant not guilty of intimidation of a witness/victim, making terroristic threats, and recklessly endangering another person. However, the trial court found Appellant guilty of retaliation against a witness/victim and harassment. On January 23, 2025, Appellant, represented by counsel, proceeded to a sentencing hearing, at the conclusion of which the trial court sentenced Appellant to six months to twelve months in prison for retaliation against a witness/victim. The trial court imposed no further penalty for harassment. This timely, counseled appeal followed on February 20, 2025, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following in her "Statement of the Question Presented" (verbatim):

> Was [Appellant's] single threat to the complainant after the complainant testified at a criminal proceeding against her insufficient evidence to sustain her conviction for retaliation against a witness, victim, or party under 18 Pa.C.S.A. § 4953?

Appellant's Brief at 2 (answer omitted).

Appellant contends the evidence was insufficient to sustain her conviction for retaliation against a witness/victim.[2] Specifically, she alleges that she made a single threat to Ms. Barnes, which is insufficient to establish

---

[2] Appellant does not challenge her conviction for harassment.

the element of harm as set forth in Section 4953(a). Additionally, Appellant alleges that, "[t]o satisfy the element of repeated acts in the retaliation statute, multiple threats are necessary[; however,] [t]here was no evidence here of multiple threats." Appellant's Brief at 10 (citation omitted). Rather, she avers she made solely a single threat, which is insufficient to prove she "engaged in a course of conduct" as is required under Section 4953(a).

Initially, we note this Court's standard of review when considering a challenge to the sufficiency of the evidence requires us to look at the evidence in a light most favorable to the Commonwealth, as verdict winner, and determine whether the evidence presented, actual and/or circumstantial, was sufficient to enable a fact-finder to find every element of the crime charged, beyond a reasonable doubt. *See Commonwealth v. O'Brien*, 939 A.2d 912 (Pa.Super. 2007).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and the circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Id.* at 913–914 (quotation omitted). The trial court, as the finder of fact, is free to believe all, some, or none of the evidence presented and is free to determine the credibility of the witnesses. *Commonwealth v. Dailey*, 828 A.2d 356 (Pa.Super. 2003). In conducting our review, this Court may not

weigh the evidence and substitute its judgment for the fact-finder. ***Commonwealth v. Baumgartner***, 206 A.3d 11, 14-15 (Pa.Super. 2019).

Appellant was convicted of retaliation against a witness/victim in a criminal trial under 18 Pa.C.S.A. § 4953(a), which provides the following: "**(a) Offense defined**.--A person commits an offense if [s]he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim, or a party in a civil matter." 18 Pa.C.S.A. § 4953(a) (bold in original).

Our Supreme Court has clarified that, assuming an intent to retaliate,[3] "the Commonwealth can sustain its burden by proving any one of the following three scenarios: (1) that the defendant harmed another by any unlawful act; or (2) that the defendant engaged in a course of conduct which threatened another; or (3) that the defendant repeatedly committed acts which threaten[ed] another." ***Commonwealth v. Ostrosky***, 909 A.2d 1224, 1228 (Pa. 2006). The Commonwealth can sustain its burden by demonstrating facts to support any one of the aforementioned clauses. ***Id.*** at 1227.

In the case *sub judice*, we conclude the Commonwealth presented sufficient evidence establishing Appellant engaged in a "course of conduct

---

[3] Appellant does not dispute on appeal that the Commonwealth proved she had the requisite intent to retaliate against Ms. Barnes, who was a witness and victim in a criminal matter against Appellant.

which threatened" Ms. Barnes and/or "repeatedly committed acts which threaten[ed]" Ms. Barnes. *Id.* at 1228.

The definition of a "course of conduct" is a "pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." *Commonwealth v. Salinas*, 307 A.3d 790, 793-94 (Pa.Super. 2023) (ellipses and brackets omitted) (quoting 18 Pa.C.S.A. § 2709(f)).[4] In *Ostrosky*, our Supreme Court held that "in order to satisfy the specific requirements of the retaliation statute, multiple threats are necessary." *Ostrosky*, 909 A.2d at 1233.

In determining whether there existed a "course of conduct" or "repeatedly committed acts" which threatened Ms. Barnes, we apply the well-established precept that "[e]ach co-conspirator is liable for the actions of the others if those actions were in furtherance of the common criminal design."[5]

_____

[4] We note there is no definition of "course of conduct" in Section 4953 of the Pennsylvania Crimes Code. "Nevertheless, we may apply the definition of 'course of conduct' located within Section 2709, and we find it applies with equal force to Section 4953(a), insofar as both sections use that term, specifically requiring a course of conduct that is supported by multiple acts." *Commonwealth v. Knorr*, No. 1213 MDA 2023, at *3 n.8 (Pa.Super. filed 8/9/24) (unpublished memorandum) (citing *Commonwealth v. Kelly*, 102 A.3d 1025, 1031-32 (Pa.Super. 2014) (*en banc*) (applying definition of "course of conduct" from Section 2709 to Section 6301)). *See* Pa.R.A.P. 126(b) (providing that "unpublished memorandum decision of the Superior Court filed after May 1, 2019…may be cited for its persuasive value.").

[5] We recognize that, under case law, while a single threat is not sufficient for a conviction under Section 4953, even under the retaliation statute, a defendant is liable for the acts of her co-conspirators.

***Commonwealth v. King***, 990 A.2d 1172, 1178 (Pa.Super. 2010). Thus, Appellant is responsible for the actions of her co-conspirators, including the two women who hurled obscenities and threats at Ms. Barnes in the courthouse hall. When considering the threat made by Appellant ("I fucked you up before, and I'm going to fuck you up again."), as well as the threat made by Appellant's co-conspirator suggesting she was even tougher than Appellant, we conclude multiple threats were made for which Appellant is responsible so as to satisfy the retaliation statute under ***Ostrosky***, ***supra***.

Thus, even assuming, *arguendo*, Ms. Barnes did not suffer harm as defined under the statute in question, we conclude Appellant, along with her co-conspirators, made multiple threats sufficient to establish a "course of conduct" and/or "repeatedly committed acts" sufficient to establish the elements of the crime under Section 4953(a). Consequently, we find the evidence was sufficient to sustain Appellant's conviction.

For all of the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judge Murray joins.

Judge Lane concurs in the result.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date:  4/22/2026