J-S65044-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK EASLEY, | : | |
| | : | |
| Appellant | : | No. 2640 EDA 2016 |

Appeal from the Judgment of Sentence August 11, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0010498-2013

BEFORE: OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 12, 2017**

Malik Easley ("Easley") appeals from the judgment of sentence entered following his conviction of intimidation of a witness or victim, retaliation against a witness or victim, and criminal conspiracy.[1] We affirm.

In its Opinion, the trial court provided a comprehensive summary of the factual history underlying the instant appeal, which we adopt as though fully restated herein. *See* Trial Court Opinion, 1/20/17, at 2-8.

Prior to trial, Easley filed a Motion to dismiss pursuant to Pa.R.Crim.P. 600(a). The trial court denied the Motion, after which the matter proceeded to a bench trial. The trial court found Easley guilty of the above-described charges. Easley subsequently filed two Motions for Extraordinary Relief, both of which the trial court denied. On August 11, 2017, the trial court sentenced

---

[1] 18 Pa.C.S.A. §§ 4952, 4953, 903.

Easley to an aggregate prison term of one to two years, plus six years of probation. Thereafter, Easley filed the instant, timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Easley presents the following claims for our review:

A. [WHETHER] THE [TRIAL] COURT COMMITTED ERROR WHEN IT PERMITTED THE PROSECUTOR TO INTRODUCE THE COMPLAINING WITNESS'S RECORDED RECOLLECTION WHERE [THE] COMPLAINING WITNESS FAILED TO VOUCH FOR THE ACCURACY OF THE STATEMENT AS PER THE RULES OF EVIDENCE[?]

B. [WHETHER] THE [TRIAL] COURT COMMITTED ERROR WHEN IT PERMITTED THE HEARSAY TESTIMONY OF THE COMPLAINING WITNESS'S IDENTIFICATION OF [EASLEY] WHERE THE COMPLAINING WITNESS HAD NO SIGNIFICANT RECOLLECTION OF THE ON-STREET IDENTIFICATION AND WAS THEREFORE NOT SUBJECT TO ANY CROSS-EXAMINATION[?]

C. [WHETHER] THE [TRIAL] COURT COMMITTED ERROR WHEN, WITHOUT COUNSEL FOR EASLEY PRESENT, IT *SUA SPONTE* PROCLAIMED THE CO-DEFENDANT "NOT GUILTY" AFTER A FINDING OF "GUILTY"[?]

D. [WHETHER] THE [TRIAL] COURT COMMITTED ERROR WHEN IT DENIED [EASLEY'S] POST-TRIAL MOTION FOR EXTRAORDINARY RELIEF[,] WHICH OUTLINED THAT THE EVIDENCE PRESENTED AT TRIAL, EVEN TAKEN IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION, DID NOT SUPPORT A CONVICTION ON THE CHARGES OF 18 PA.C.S.[A. §] 4952 – INTIMIDATION OF A WITNESS AND 18 PA.C.S.[A. §] 4953 – RETALIATION OF A WITNESS[?]

Brief for Appellant at 6.

Easley first claims that the trial court improperly admitted into evidence a recorded statement made by the complaining witness, Maneja Singleton

("Singleton"). *Id.* at 11. According to Easley, Pa.R.E. 803.1(3) provides that the statements are admissible as substantive evidence "so long as those statements, when given, were adopted by the witness in a signed writing or were verbatim contemporaneous recordings of oral statements." Brief for Appellant at 11. Easley contends that at trial, "Singleton was never able to vouch that the statement was accurate at the time that she provided the statement." *Id.* at 12. Easley asserts that the admission of the prior statement caused him prejudice, because Singleton could not identify Easley or his co-defendant at trial. *Id.*

The following standard governs our review of the admissibility of evidence:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.
>
> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (quoting *Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. 2006) (*en banc*) (internal citations omitted)).

In its Opinion, the trial court set forth the relevant law, addressed this claim, and concluded that it lacks merit. *See* Trial Court Opinion, 1/20/17, at 10-11. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis as to Easley's first claim. *See id.*

In his second claim of error, Easley contends that the trial court improperly admitted the hearsay testimony of Singleton's identification of Easley as the perpetrator, "where the complaining witness had no significant recollection of the on-street identification[,] and was therefore not subject to any effective cross-examination." Brief for Appellant at 12 (capitalization omitted). Relying on Pa.R.E. 803.1(2), Easley argues that, although Singleton was in court, she was unable to be effectively cross-examined because she could not recall the prior identification. Brief for Appellant at 13. Easley argues that the admission of Singleton's prior identification caused him prejudice, because that was the only evidence identifying him as a perpetrator. *Id.*

In its Opinion, the trial court addressed Singleton's challenge to the identification evidence as inadmissible hearsay, and concluded that the claim lacks merit. *See* Trial Court Opinion, 1/20/17, at 11-12. We agree with the reasoning of the trial court, as set forth in its Opinion, and discern no error or abuse of discretion in this regard. Accordingly, we affirm on the basis of the trial court's Opinion with regard to Easley's second claim. *See id.*

In his third claim of error, Easley argues that, without his counsel present, the trial court improperly declared that his co-defendant was "not guilty," after initially finding his co-defendant "guilty." Brief for Appellant at 13. Easley contends that his counsel "should have been present to make argument as to why his client should also be acquitted. *Id.* at 14.

Easley has no standing to challenge the verdict as to his co-defendant. Certainly, an appellant "lacks standing to object to a violation of his co-defendant's rights." *Commonwealth v. Johnson*, 378 A.2d 859, 860 (Pa. 1977); *accord Commonwealth v. Baker*, 614 A.2d 663, 670 (Pa. 1972). Easley has not offered any case law or argument as to how his co-defendant's verdict caused him prejudice, or infringed upon his rights. As such, we cannot grant Easley relief on this claim.

In his fourth claim of error, Easley argues that the trial court improperly denied his post-trial Motion for Extraordinary Relief, which challenged the verdicts as against the sufficiency of the evidence. Brief for Appellant at 14. Easley argues that, even when viewed in a light most favorable to the Commonwealth, the evidence did not show that "a harm was caused nor repeated action of conduct[,] which is required to support a conviction under the statute[s]." *Id.*

> In reviewing a challenge to the sufficiency of the evidence,
>
> [t]he standard we apply … is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the

above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 150-151 (Pa. Super. 2013) (citation omitted). "This standard of deference is not altered in cases involving a bench trial, because the province of a trial judge sitting without a jury is to do what a jury is required to do." *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa. Super. 2008) (internal quotation marks and citation omitted).

In its Opinion, the trial court addressed Easley's challenge to the sufficiency of the evidence and concluded that it lacks merit. *See* Trial Court Opinion, 1/20/17, at 13-16. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis as to Easley's final claim.

Judgment of sentence affirmed.

Judge Ott joins the memorandum.

Judge Olson concurs in the result.

J-S65044-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/12/2017</u>

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CRIMINAL TRIAL DIVISION

| | | | |
|---|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0010498-2013 | **FILED** |
| | : | | |
| v. | : | | JAN 2 0 2017 |
| | : | SUPERIOR COURT | |
| MALIK EASLEY | : | NO. 2640 EDA 2016 | Appeals/Post Trial Office of Judicial Recor |

## OPINION

THOMAS STREET, J.                                                January 20, 2017

## I.   OVERVIEW AND PROCEDURAL HISTORY

The Defendant, Malik Easley, was arrested and charged with Intimidation of a Witness or Victim (F3),[1] Retaliation Against a Witness or Victim (F3),[2] and several other charges on July 17, 2013, in the area of the 2100 block of S. Gould Street, Philadelphia, Pennsylvania. On February 5, 2016, this court held a motions hearing and denied the Defendant's Motion to Dismiss pursuant to Rule 600(a). On the same day, a non-jury trial was held at which the Defendant was found guilty of Intimidation of Witness or Victim, Retaliation Against a Witness or Victim, and Criminal Conspiracy, and not guilty as to the remaining charges.

On February 10, 2016, the Defendant filed a Motion for Extraordinary Relief. On February 19, 2016, the Defendant's Motion for Extraordinary Relief was denied without a hearing. On May 3, 2016, the Defendant again filed a Motion for Extraordinary Relief. On August 11, 2016, the Defendant's Motion for Extraordinary Relief was denied. On that same day, the Defendant was sentenced to not less than one (1) year nor more than two (2) years of incarceration and six years



CP-51-CR-0010498-2013 Comm. v. Easley, Malik
Opinion

7891680651

---

[1] 18 Pa.C.S.A. § 4952
[2] 18 Pa.C.S.A. § 4953

of probation. On August 12, 2016, the Defendant timely filed a Notice of Appeal to the Pennsylvania Superior Court.

## II.     FACTUAL HISTORY

Ms. Maneia Singleton testified that on July 17, 2013, the incident in question occurred at her address on the 2100 block of S. Gould Street, Philadelphia, Pennsylvania. (N.T. 2/5/16 pp. 42, 46). She testified that she was punched in the face by a man named Vlad, a friend of her fiancé. (N.T. 2/5/16 p. 43). She stated that she was at a neighborhood store when Vlad saw her speaking with someone else. *Id.* Vlad proceeded to tell her fiancé that he saw her speaking with someone, which resulted in an argument between Ms. Singleton and her fiancé. *Id.* She then began to argue with Vlad, which escalated into him punching her in the face. (N.T. 2/5/16 p. 44).

Ms. Singleton testified her neighbor called the police after witnessing the incident. (N.T. 2/5/16 p. 44). She did not know whether Vlad was arrested, and that no officer came to speak to her in response to the neighbor's report because she was taken to the hospital to get stitches. (N.T. 2/5/16 pp. 44-45). Ms. Singleton testified that once the police arrived at the hospital and asked her what happened, she then told them that Vlad punched her. (N.T. 2/5/16 p. 45).

Ms. Singleton testified that after getting stitches she went home where it was chaotic due a large crowd in front of her house. (N.T. 2/5/16 pp. 45, 46). She stated that she was frustrated by the crowd and from having been assaulted. *Id.* She testified that many people from the crowd came up to her and asked what had happened. (N.T. 2/5/16 pp. 46, 47). Ms. Singleton testified that "a lot of people was [sic] upset that my fiancé was a lot bigger than Vlad and when Vlad hit me, my fiancé hit him." (N.T. 2/5/16 p. 47). She stated that after speaking to people in the crowd in front of her house, she called 911 around 6:00 p.m. that day. (N.T. 2/5/16 p. 48). She explained

2

that the people were aggressively asking her questions and that she felt threatened and unsafe especially since she had been attacked earlier. *Id.*

Ms. Singleton then listened to Commonwealth Exhibit 1 (C-1), a 911 telephone call made by her to the police. (N.T. 2/5/16 p. 51). Ms. Singleton recognized her voice and recalled that she had gone to the 12th District Police Station a couple of times that day to make a report. *Id.* Ms. Singleton stated she made this call because she felt threatened by the crowd outside of her house. *Id.* She also stated that a man in the crowd whom she had seen before in the neighborhood visibly put a gun in the trunk of a vehicle parked on the block. (N.T. 2/5/16 pp. 51-52). The vehicle was a green Grand Marquis and she gave the police the vehicle's license plate number. (N.T. 2/5/16 p. 53).

After the 911 call, the police came to Ms. Singleton's house and asked if she recognized a green Grand Marquis before her to which she replied yes. (N.T. 2/5/16 p. 54). She testified that when asked whether there was anyone in the car she recognized, she replied no although she believed they could have been a part of the crowd. (N.T. 2/5/16 p. 54). Ms. Singleton testified that while she could not precisely recall how many people the police asked her to identify, she remembered that there was more than one and they were men. (N.T. 2/5/16 p. 55). Ms. Singleton testified that after being asked to identify the men she went to 55th and Pine Street and met with Detective Eves to provide a statement. *Id.*

Ms. Singleton was then asked about Commonwealth Exhibit 2 (C-2), the police statement she had provided to Detective Eves. (N.T. 2/5/16 p. 58). Ms. Singleton testified that the statement was similar to the situation and she remembered having an argument outside of her front door with men. (N.T. 2/5/16 pp. 58-59). The police statement she gave was furnished within 24 hours of the incident. *Id.* Ms. Singleton testified that she gave a statement to Detective Eves that "explained

3

to him what happened and what I saw with my eyes. That's all – that's what I told." (N.T. 2/5/16 p. 60). She stated that after giving the statement, she went to a hearing in front of a grand jury and was asked questions on August 9, 2013. (N.T. 2/5/16 pp. 64-65). The transcript from the grand jury hearing was marked as Commonwealth Exhibit 3 (C-3). (N.T. 2/5/16 p. 63).

At that grand jury hearing, Ms. Singleton testified that several of those in the crowd outside of her house on July 17th called her "the neighborhood snitch." (N.T. 8/9/13 p. 6). She identified the Defendant as the man that put the gun in the trunk of the green Grand Marquis near her house. (N.T. 8/9/13 p. 7). He had taken the gun out from underneath his clothing near his waistband. *Id.* Later that day, the Defendant and another man came back to the 2100 block in the green Grand Marquis. (N.T. 8/9/13 p. 10). The Defendant and another man exited the vehicle at the same time and the man approached Ms. Singleton and her fiancé as the Defendant hovered back and forth. (N.T. 8/9/13 pp. 9-11). The man said "you all some f-ing [sic] snitches" and then struck Ms. Singleton's fiancé in the mouth and revealed a gun at his waistband. *Id.* When the police later stopped the Defendant and the man based upon Ms. Singleton's description of the green Grand Marquis, she positively identified them as the men that had harassed her on the two separate occasions on July 17th. (N.T. 8/9/13 p. 12).

On cross-examination at trial, regarding Exhibit C-2, Ms. Singleton testified that she recalled providing descriptions of several individuals to the police on July 17, 2013. (N.T. 2/5/16 p. 68). There were some things she could not precisely remember though with it being nearly three (3) years later. *Id.* Ms. Singleton could not recall whether the men she identified with the green Grand Marquis were inside or outside of the vehicle when she made her positive identification. (N.T. 2/5/16 p. 69).

4

Philadelphia Police Sergeant Jonathan Eves testified that he was the assigned investigator for the incident involving Ms. Singleton. (N.T. 2/5/16 p. 72). Sergeant Eves took a written statement from Ms. Singleton as part of his investigation. *Id.* Upon being questioned about Exhibit C-2, Sergeant Eves testified that he recalled it as the statement he took from Ms. Singleton. (N.T. 2/5/16 p. 73). He noted that Ms. Singleton's signature was at the bottom of the document and that he had given her a chance to read and review the statement before signing. (N.T. 2/5/16 p. 74). He further noted that Ms. Singleton had not mentioned any mental or physical conditions which would have impaired her memory, nor did she appear to have any difficulty answering the questions. *Id.* Sergeant Eves stated that while Ms. Singleton was answering the questions, she did appear to be scared. (N.T. 2/5/16 p. 75). Sergeant Eves testified that Ms. Singleton exhibited clear physical manifestation of fear. *Id.* He said that she "was talking a little fast and she was definitely shaken a little bit. She told me numerous times that she was scared about giving a statement and everything." *Id.*

On cross-examination, Sergeant Eves explained that his process for taking statements was for him to type precisely what the interviewee said as they spoke. (N.T. 2/5/16 p. 76). He further explained that after typing precisely what the interviewee says, he gives them a chance to read and review it prior to signing. *Id.* When questioned about whether he asked Ms. Singleton if she had an injury at the time she gave the statement, he replied, "I probably did. It was three years ago... I believe she told me in her statement that she was coming home from the hospital." (N.T. 2/5/16 p. 77). Sergeant Eves noted at the time of the statement he felt no need to inquire into whether Ms. Singleton was taking medication because her statement was very coherent. *Id.* On redirect-examination, Sergeant Eves stated Ms. Singleton took public transportation to the location of the grand jury hearing and that he executed a search warrant on a green Grand Marquis with

5

Pennsylvania tag JCC-9621. (N.T. 2/5/16 p. 80). He also stated that this occurred in the early morning hours of July 18, 2013, and that he did not recover anything from the vehicle. (N.T. 2/5/16 p. 81).

On direct examination, Philadelphia Police Officer Thomas Brown of the 6th District testified that he performed his tour of duty at the 2200 block of South 65th Street on July 19, 2013, at approximately 6:15 p.m. (N.T. 2/5/16 pp. 82-83). Officer Brown testified that he was working with his partner Officer Ashley Ritaldato in a marked police car when they responded to a radio call for a person with a gun. (N.T. 2/5/16 p. 83). Officer Brown explained that he believed the call also mentioned a green vehicle with Pennsylvania tag JCC-9621. *Id.* He noted that he and his partner located this vehicle on 2200 South 65th Street, which is only approximately two blocks away from 2100 S. Gould Street. *Id.* He remarked that only about a minute passed between the dispatch call and when he stopped his car. (N.T. 2/5/16 p. 84). Officer Brown testified that when he pulled over the green car the Defendant and another man were inside the vehicle. *Id.* In response to being questioned if Ms. Singleton displayed any conditions that would have impaired her ability to observe or remember at the time in question, he replied, "not that I can recall." (N.T. 2/5/16 p. 85).

On cross-examination, Officer Brown testified that he could not recall the description he received of the Defendant and Mr. Abron, just the vehicle. (N.T. 2/5/16 p. 86). Officer Brown stated the dispatch call described a man with a gun. *Id.* He further testified he and his partner searched the two males for their safety and did not recover a gun on either of them. *Id.* He stated he did not remain with the vehicle the entire time before the detective executed a search warrant. (N.T. 2/5/16 p. 87). However, another marked vehicle remained with the green Grand Marquis

6

during this period. *Id.* Officer Brown testified that he did not recall the description of either the Defendant or the other male. *Id.*

On direct examination, Philadelphia Police Officer John Godlewski, of the 12th District testified that on July 17, 2013, he and his partner Officer Flanagan responded to a radio call and first came into contact with Ms. Singleton on the 2100 block of S. Gould Street. (N.T. 2/5/16 pp. 93-94). When presented with Commonwealth Exhibit 4 (C-4), a 75-48 prepared after speaking with Ms. Singleton, Officer Godlewski stated he recognized it. (N.T. 2/5/16 p. 94). Officer Godlewski testified that once he came into contact with Ms. Singleton she told him what occurred and did not appear to be mentally or physically impaired. *Id.* He testified that after speaking with Ms. Singleton, they took her to 65th and Paschall Avenue for an identification of the Defendant and the other man. (N.T. 2/5/16 p. 95). He stated that he recognized the Defendant in the courtroom. *Id.* Officer Godlewski testified that when Ms. Singleton was questioned if they could identify anyone, she positively identified the Defendant as one of the men that approached her at her house. (N.T. 2/5/16 p. 98).

On cross-examination, Officer Godlewski testified that when Ms. Singleton made her identification, the Defendant was facing Ms. Singleton. (N.T. 2/5/16 pp. 99-100). He could not recall whether she verbally or physically gestured to identify the Defendant. (N.T. 2/5/16 pp. 100-101). Officer Godlewski stated that when Ms. Singleton made the identification he and the other officers were all standing near the Defendant and Ms. Singleton. (N.T. 2/5/16 p. 101). Commonwealth Exhibits 6 (C-6) was marked and moved into the record as the certified certificate of non-licensure for the Defendant. (N.T. 2/5/16 p. 106).

On direct examination, the Defendant then testified that he never said anything to Ms. Singleton, nor did he ever see Ms. Singleton before July 17, 2013. (N.T. 2/5/16 p. 109). The

Defendant testified that he did not know Vlad. *Id.* On the day in question, the Defendant stated that he did recall being stopped twice by the police. (N.T. 2/5/16 p. 110). He explained that he was first pulled over at approximately 9:00 a.m. and stopped by two officers on his way to work. *Id.* He explained that he was leaving from a store when a police car pulled up and an officer questioned if he knew anything regarding an incident that had occurred earlier that day. *Id.* The Defendant replied "no" to the police. *Id.* The Defendant stated he was then searched and asked where he was going, to which he replied he was going to work. *Id.* The Defendant stated that the officer then told him to leave and that he followed that instruction. (N.T. 2/5/16 p. 111). He was pulled over for a second time after returning to the area later in the day. *Id.* The Defendant stated that he never had a gun on him that day nor was a gun found in his car. *Id.*

On cross-examination, the Defendant testified that he was the driver and owner of the green Grand Marquis on the day in question and that another male was his passenger that afternoon. (N.T. 2/5/16 p. 112). He testified that he was on the 2100 block of S. Gould Street in order to pick up that male. *Id.* He stated after he left this location he was pulled over by the police for the second time at approximately 6:15 p.m. (N.T. 2/5/16 pp. 112-113). The Defendant further testified that while he heard the prosecution play a 911 call which mentioned a license plate number, he did not recall if the plate number was his. (N.T. 2/5/16 p. 114). The Defendant also testified that he never spoke with or saw Ms. Singleton on the day in question. *Id.* He stated that he picked up a male at approximately 11:00 a.m., drove to work, and was stopped by police as he was driving home. (N.T. 2/5/16 p. 115).

## III.    ISSUES

In the Pa. R.A.P. 1925(b) Statement of Matters Complained of on Appeal, the Defendant identifies the following issues:

8

1. The Court committed error when it permitted the prosecutor to introduce the complaining witness's recorded recollection where complaining witness failed to vouch for the accuracy of the statement as per the rules of evidence. [N.T. 2/5/16, pp.61-62]

2. The Court committed error when it permitted the hearsay testimony of the complaining witness's identification of the defendant where the complaining witness had no significant recollection of the on-street identification and was therefore not subject to any effective cross-examination. [N.T. 2/5/16, pp.95-96]

3. The Court committed error when, without counsel for Easley present, it *sua sponte* proclaimed the co-defendant "not guilty" after a finding of "guilty".

4. The Court committed error when it denied the defendant's post-trial motion for Extraordinary Relief which outlined that the evidence presented at trial, even taken in the light most favorable to the prosecution, did not support a conviction on the charges of 18 Pa.C.S. 4952 - Intimidation of Witnesses and 18 Pa.C.S. 4953 Retaliation of a Witness.

## IV.  STANDARD OF REVIEW

A challenge to the sufficiency of evidence is a question of law. *Commonwealth v. Heater*, 899 A.2d 1126, 1131 (Pa. Super. 2006). A reviewing court may not weigh the evidence or substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Adams*, 882 A.2d 496, 498-99 (Pa. Super. 2005). The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *Id.* at 499. "If the record contains support for the verdict, it may not be disturbed." *Id.*

The appellate court may only consider the evidence from the Commonwealth's witnesses coupled with the evidence of the prosecution that, when read in the context of the entire record, remains un-contradicted. *See Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008), *appeal denied*, 598 Pa. 787, 959 A.2d 928 (2008) (citing *Commonwealth v. Mistler*, 912 A.2d

9

1265, 1268 (Pa. 2006)). An appellate court must "determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate." *Id.* "Where the record supports the factual findings of the trial court [an appellate court is] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003).

## V.     DISCUSSION

The Defendant identifies four issues on appeal. First, the Defendant argues that this court committed error when it permitted the prosecutor to introduce the complaining witness's recorded recollection where complaining witness failed to vouch for the accuracy of the statement as per the rules of evidence. This court disagrees.

"A witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying." P.a.R.E., Rule 612. A past recollection recorded is "not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement." P.a.R.E., Rule 803.1. A past recollection recorded by a declarant-witness is admissible if the record made or adopted by the declarant-witness satisfies three requirements: (1) it is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately; (2) it was made or adopted by the declarant-witness when the matter was fresh in their memory; and (3) the declarant-witness testifies that it accurately reflects their knowledge at the time when it was made. P.a.R.E., Rule 803.1(3), *Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Shaw*, 494 Pa. 364, 431 A.2d 897 (1981); *Commonwealth v. Sal-Mar Amusements, Inc.*, 428 Pa. Super. 321, 630 A.2d 1269 (1993); *Hammel v. Christian*, 416 Pa. Super. 78, 610 A.2d 979 (1992).

10

In this case, Ms. Singleton's past recorded recollection was introduced by the Commonwealth at trial and satisfied all the requirements of the Pennsylvania Rules of Evidence for admission. Under Rule 803.1, Ms. Singleton as the declarant-witness was permitted to use the police statement prepared by then-Detective Eves to refresh her memory while testifying. Ms. Singleton could plainly no longer recall the events that led Detective Eves to record the statement well enough to testify fully and accurately, satisfying the first requirement. Ms. Singleton made the statement to Detective Eves within 24 hours of the incident and, after reading and reviewing the statement, adopted it with her signature, satisfying the second requirement. (N.T. 2/5/16 pp. 58-59, 73-74).

Concerning the third requirement, Ms. Singleton testified that the statement she gave to Detective Eves "explained to him what happened and what I saw with my eyes. That's all – that's what I told." (N.T. 2/5/16 p. 60). While Ms. Singleton stated that "[Detective Eves] could have paraphrased" the statement, Detective Eves explained on cross-examination that his process for taking statements was for him to type precisely what the interviewee said as they spoke. (N.T. 2/5/16 p. 76). Ms. Singleton was concerned that "she could not exactly remember" the recorded statement, but if she had been able to exactly remember all the events of the incident then there would been no reason to ever refresh her memory in the first place. The statement was properly recorded by Detective Eves and despite Ms. Singleton's erratic testimony in court, it accurately reflected her knowledge at the time the statement was made. Therefore, the third requirement for a past recorded recollection was satisfied and this court did not err when it permitted the Commonwealth to introduce it into evidence.

Second, the Defendant argues that this court committed error when it permitted the hearsay testimony of the complaining witness's identification of the defendant where the complaining

11

witness had no significant recollection of the on-street identification and was therefore not subject to any effective cross-examination. This court disagrees.

A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and is in a writing signed and adopted by the declarant is not excluded by the rule against hearsay. P.a.R.E., Rule 803.1, *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992). Here, Ms. Singleton's positive identification of the Defendant took place in the presence of several police officers, followed by the formal statement given to Detective Eves that memorialized the identification. (N.T. 2/5/16 pp. 54-55, 72-75, 95-98). Ms. Singleton read and reviewed the statement before signing her name to it. (N.T. 2/5/16 pp. 72-75). Officer Godlewski's testimony on direct examination that Ms. Singleton positively identified the Defendant, in contradiction to her prior testimony, was permissible since Ms. Singleton's identification was signed and adopted by her in the statement given to Detective Eves. Therefore, Officer Godlewski's testimony regarding Ms. Singleton's identification of the Defendant was not excluded by the rule against hearsay and was properly admitted.

Third, the Defendant argues that this court committed error when, without counsel for the Defendant present, it *sua sponte* proclaimed the co-defendant not guilty after a finding of guilty. This court disagrees.

In criminal cases, the rules of procedure permit joinder of parties. Pa. R. Crim. P. 582. At the entry of final judgment by a trial court, the sentence for a guilty defendant will ordinarily be imposed shortly thereafter. Pa. R. Crim. P. 704. Since a final judgment concludes the joinder of the parties at trial, the presence of a defendant and/or their counsel during a post-conviction hearing (e.g., a sentencing hearing) is not warranted. Here, this court's entry of final judgment for the Defendant and his co-defendant concluded the joinder of the parties for the criminal trial. Any

12

hearings involving the co-defendant from that point did not warrant the presence of the Defendant and/or his counsel, in the same manner that the sentencing of co-defendants may be conducted separately. Therefore, this court did not err when it acquitted the co-defendant in a separate hearing without counsel for the Defendant present.

Fourth, the Defendant argues that this court committed error when it denied the defendant's post-trial Motion for Extraordinary Relief which claimed that the evidence presented at trial, even taken in the light most favorable to the prosecution, did not support a conviction on the charges of Intimidation of a Witness or Victim and Retaliation Against a Witness or Victim. This court disagrees.

The Defendant was convicted under the following statute:

## § 4952. Intimidation of witnesses or victims

(a) Offense defined.—A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

13

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S. § 4952(a).

The record demonstrates that there was sufficient evidence to support the guilty verdict for Intimidation of a Witness or Victim. *Id.* As noted *supra*, a person commits the proscribed offense if, with the intent to interfere with the administration of justice, they attempt to intimidate any witness or victim into withholding, falsifying, or providing misleading information or testimony to law enforcement, a prosecutor, or a judge. 18 Pa.C.S. § 4952(a)(2), 18 Pa.C.S. § 4952(a)(3). The intent of a defendant to intimidate a victim to shelter the truth surrounding a crime may be inferred from the defendant's words and actions, it not being necessary to prove intent with direct evidence. See *Commonwealth v. Collington*, 419 Pa.Super. 538, 615 A.2d 769, 770 (1992).

In this case, the Defendant intimidated Ms. Singleton shortly after her incident with Vlad and her communication with the police by publicly brandishing a handgun in front of her while members of the nearby crowd called her "the neighborhood snitch." (N.T. 8/9/13 pp. 6-7, N.T. 2/5/16 pp. 51-52). The Defendant returned later that day to Ms. Singleton's house with another man, who struck her fiancé in the mouth and said "you all some f-ing [*sic*] snitches," while also revealing a gun at his waistband. (N.T. 8/9/13 pp. 9-11). The Defendant had driven the man there and stood nearby while the incident occurred. *Id.* The Defendant was stopped twice by the police while driving a green vehicle with Pennsylvania tag JCC-9621,which specifically was included in the flash information and previously identified as having been driven by the man threatening her with a handgun. (N.T. 8/9/13 pp. 53, 83). Lastly, Sergeant Eves also testified that Ms. Singleton exhibited clear physical manifestations of fear when he interviewed her regarding multiple encounters with the Defendant. (N.T. 2/5/16 p. 75).

14

In looking at the totality of the circumstances, the conduct of the Defendant demonstrates an intent to intimidate Ms. Singleton in an effort to dissuade her from cooperating with law enforcement. His actions and words on the day of the incident infer a coordinated attempt to frighten Ms. Singleton into silence. Therefore, this court did not err in finding the Defendant guilty of Intimidation of a Victim.

Concerning the charge of Retaliation Against a Witness or Victim, the Defendant was convicted under the following statute:

§ 4953. Retaliation against witness, victim or party

(a) Offense defined.—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S. § 4953(a).

The statutory construction of § 4953 provides two avenues through which a defendant may run afoul of the statute. *Commonwealth v. Ostrosky*, 866 A.2d 423, 428 (Pa. Super. 2005), *aff'd*, 589 Pa. 437, 909 A.2d 1224 (2006). The first avenue is through causing harm to another by any unlawful act in retaliation for anything lawfully done in the capacity as a witness or victim. *Id.* At a minimum, the severity of the "harm" must be more than a single incident of verbal threats against a victim. *Id.* at 429. *See also Commonwealth v. Copeland*, 723 A.2d 1049, 1050 (Pa. Super. 1998) (involving prosecution under retaliation statute where defendant, who was accused of theft, continued to harass victims for seven months by making repeated telephone calls, damaging property, engaging victims in a car chase and car fire, making death threats, and physically confronting victims); *Commonwealth v. Perillo*, 626 A.2d 163, 164 (Pa. Super. 1993) (involving retaliation by blocking victim's exit from her apartment, throwing victim against mailbox,

15

following victim to her car, spitting in victim's face, and threatening to rape victim). The second avenue is through either engaging in a course of conduct which threatens another in retaliation for anything lawfully done in the capacity of a witness or victim *OR* repeatedly committing acts which threaten another in retaliation for anything lawfully done in the capacity of a witness or victim. *Id.* at 427-428.

Here, the Defendant violated § 4953, satisfying both prongs of the statute. The Defendant engaged in retaliation against Ms. Singleton in two separate instances, first outside of her residence with the handgun and second in the incident involving both Ms. Singleton and her fiancé. By brandishing a handgun and returning later with the man who physically and verbally assaulted Ms. Singleton and her fiancé, the Defendant's conduct was far above an isolated verbal threat. Further, by engaging in multiple threatening acts against Ms. Singleton, the Defendant satisfied the statute's requirement of repeated threatening conduct. Therefore, this court did not err in finding the Defendant guilty of Retaliation Against a Witness or Victim.

## VI.    CONCLUSION

For all of these reasons, this court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: January 20, 2017

16