J-A22031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SUSAN SILVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMMY BERTENTHAL | : | |
| | : | |
| Appellant | : | No. 1156 WDA 2023 |

Appeal from the Decree Entered August 29, 2023
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-15-008183

| | | |
|---|---|---|
| SUSAN SILVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMMY BERTENTHAL | : | No. 1185 WDA 2023 |

Appeal from the Decree Entered August 29, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD-15-008183

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: January 30, 2025**

Appellant, Sammy Bertenthal ("Husband"), and Cross-Appellant, Susan

Silver ("Wife"), appeal from the decree entered in the Allegheny County Court

of Common Pleas, which finalized the parties' divorce. We affirm.

The relevant facts and procedural history of this appeal are as follows.

The parties married on September 30, 2012.[1]  Prior to the marriage, the parties entered into a prenuptial agreement ("the Agreement").  The Agreement provides that, in the event of divorce, "the statutes, rules and case law of Pennsylvania or any other jurisdiction regarding the distribution of property … shall not apply to the parties hereto[.]"  (Agreement, dated 9/27/12, at 2).  Regarding property acquired during the marriage, the Agreement states:

> The parties agree that only those assets purchased after the date of their marriage and titled in their joint names, (as Huband and Wife, by the entireties, or as joint tenants with right of survivorship), or non-marital assets that are re-titled in joint names, shall be "Marital Property" for purposes of this Agreement, excluding all other property by this Agreement of the parties as required under Pennsylvania law.  23 Pa.C.S.A. § 3501(a)(2).  The parties hereto agree that in the event of a divorce, all "Marital Property" as defined by this Agreement shall be divided equally between the parties, and the parties waive "equitable distribution" of same.

(*Id.* at 6).

On July 13, 2017, Wife filed a divorce complaint.  The matter proceeded to trial on July 7, 2022.  On August 31, 2022, the court issued findings of fact

---

[1] The parties have one son ("Child"), who was born in 2006.  Husband and his prior spouse adopted Child in 2007.  Husband's prior spouse subsequently died, and Wife adopted Child in 2013.  (*See* Husband's Custody Complaint, filed 6/11/15, at ¶3).

and an order setting forth the property distribution scheme.[2] Wife filed a motion for reconsideration on September 12, 2022. Husband filed an answer, as well as his own motion for reconsideration, on September 14, 2022. On April 14, 2023, the court conducted a hearing on the matter.

On May 3, 2023, the court vacated its prior order setting forth the property distribution scheme. The court also issued amended findings of fact and an order setting forth a new distribution scheme. Most of the court's findings dealt with the marital residence:

> After the marriage between Husband and Wife, Wife adopted the son. Father, who has sole physical and legal custody of the Child, continues to reside in this home with their son.
>
> While I find that under the prenuptial agreement, Wife is entitled to receive 50% of the fair market value of the marital home ($367,500) I am concerned that immediate sale of the home would uproot Husband and his son who has resided in this home for nearly his entire life.
>
> Wife has a home of her own that is not marital property under the prenuptial agreement and a delay in the sale or refinancing of the home would not cause her to be uprooted in the same manner as Husband and their son. She is free to live in this home, refinance the home, or sell it as she deems appropriate for her needs without any obligation to Husband.

(Amended Findings of Fact, filed 5/3/23, at ¶¶27-29).

Based upon the foregoing, the court directed Husband to pay

---

[2] The parties refer to this as the August 29, 2022 order. Although the order was dated August 29, 2022, the record reveals that it was not docketed until August 31, 2022.

$367,500.00 to Wife for her share of the marital residence. (*See* Order, filed 5/3/23, at ¶2). The court also provided instructions regarding Husband's payment:

> The judgment for [Wife's] share of the marital residence under the prenuptial agreement shall be paid in two payments, with the first payment of $183,750 to be made within thirty days after the eighteenth birthday of their Child, by September 14, 2024. The second payment of $183,750 shall be made within one year after the first payment is made.

(*Id.* at ¶3). Thereafter, the court entered the divorce decree on August 29, 2023.

Husband timely filed a notice of appeal on September 26, 2023, which this Court docketed at 1156 WDA 2023. Wife timely filed a notice of appeal on September 28, 2023, which this Court docketed at 1185 WDA 2023. On October 2, 2023, the court issued an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[3] Husband timely filed his Rule 1925(b) statement on October 12, 2023. Wife timely filed her Rule 1925(b) statement on October 20, 2023.

At No. 1156 WDA 2023, Husband raises the following issues for our review:

---

[3] The order referred to Husband as "appellant herein," and it directed Husband to file a concise statement of matters complained of on appeal. (Order, filed 10/12/23). Although the order did not specifically direct Wife to file a concise statement, Wife submitted her own Rule 1925(b) statement within twenty-one days of the entry of the order.

Whether the trial court abused its discretion and erred as a matter of law by not considering the joint lien on the joint former marital residence where the prenuptial agreement requires equal division of marital property and by not awarding Husband deductions for mortgage payments made where the parties were co-borrowers on the mortgage, both are on the deed, and equally shared mortgage payments during the marriage.

Whether the trial court abused its discretion and erred as a matter of law by not making adequate credibility determinations and findings of fact with regard to each party's expert appraisers and, instead, "split the difference" of each appraiser's value.

(Husband's Brief at 3).

At No. 1185 WDA 2023, Wife raises two issues for this Court's review:

Whether the trial court abused its discretion by misapplying the law and failing to follow proper legal procedure by allowing [Husband] under "equitable distribution" rules to pay the $367,500 he owes to [Wife] in two separate payments on September 14, 2024, and a year later on September 14, 2025, when the parties' prenuptial agreement specifically disclaimed equitable distribution in the event of a divorce.

Whether the trial court abused its discretion by misapplying the law and failing to follow proper legal procedure by allowing [Husband] to pay the $367,500 he owes to [Wife] without awarding [Wife] post-judgment interest on the $367,500.

(Wife's Brief at 14-15).

In his first issue, Husband complains that the court "declined to award Husband credit for his post-separation payments to the mortgage" on the marital residence. (Husband's Brief at 9). Husband also maintains that the court provided Wife with a "substantial windfall" by "relieving Wife of all

responsibility of the mortgage for which she agreed to pay by virtue of the joint refinancing[.]" (*Id.*) Although Husband admits that "Wife's name is not on the Note" issued in conjunction with the mortgage, Husband insists that the property "cannot be viewed in a vacuum without reference to its debt." (*Id.* at 11).

> It is the net value of the residence that is marital property, not only the asset, without reference to the recorded joint lien on it. Though the Note was not joint, the portion of the Agreement which references debt must be construed to apply to independent debts, not debts that (literally) attach to an asset.

(*Id.*) Husband concludes that the court erred by failing to provide him with credit for his post-separation mortgage payments. We disagree.

At the outset, we observe: "The determination of marital property rights through prenuptial, postnuptial and settlement agreements has long been permitted, and even encouraged. Both prenuptial and post-nuptial agreements are contracts and are governed by contract law." *Holz v. Holz*, 850 A.2d 751, 757 (Pa.Super. 2004), *appeal denied*, 582 Pa. 700, 871 A.2d 192 (2005) (internal citations and quotation marks omitted). "In determining whether the trial court properly applied contract principles, the reviewing Court must decide, based on all the evidence, whether the trial court committed an error of law or abuse of discretion." *Lewis v. Lewis*, 234 A.3d 706, 711 (Pa.Super. 2020). An abuse of discretion

> is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that an appellate court is of the opinion that there

was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and the effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law.

*Id.* (quoting *Adams v. Adams*, 848 A.2d 991, 992-93 (Pa.Super. 2004)).

"To the extent we must decide a question of law … our standard of review is *de novo*, and our scope of review is plenary." *Id.*

Additionally:

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. **When a writing is clear and unequivocal, its meaning must be determined by its contents alone.**

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Ramalingam v. Keller Williams Realty Group, Inc.*, 121 A.3d 1034, 1046

(Pa.Super. 2015) (emphasis in original). "Further, absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." ***Stackhouse v. Zaretsky***, 900 A.2d 383, 386 (Pa.Super. 2006), *appeal denied*, 590 Pa. 669, 912 A.2d 838 (2006).

Instantly, the Agreement contained the following provisions regarding the parties' debts:

**8. Indebtedness**

A. Debts contracted by the parties prior to their marriage shall be paid by the parties who shall have contracted them, and the Non-Marital Property of one party shall not be charged with the prior debts of the other.

B. Each party shall be solely responsible for debts incurred during the marriage which are in their name alone.

C. Marital debts shall be limited to those debts which are incurred after the date of marriage in the joint names of the parties. In the event of divorce, each party shall be responsible for one-half of the marital debt.

(Agreement at 8).

When considering Husband's mortgage payments, the court interpreted the Agreement as follows:

Prior to and at the time of the marriage, Husband resided in the home located at 170 Seegar Road, Pittsburgh, PA 15241. Husband purchased this home with his first wife (deceased) in 2002. [Husband] resided in this home with his first wife and their son until the death of the first wife. [Wife] did not immediately move into the Seegar Road residence after the marriage in September 2012. She moved into this home in December of 2012. In April of 2013, [Husband] put [Wife's] name on the deed to the Seegar Road residence. However, there was no evidence presented at trial to show that Wife was responsible for the

mortgage payments on the marital residence. In fact, Counsel for both parties acknowledged at the hearing that although Wife was on the mortgage to secure the debt, she did not sign the note to obligate her to payment of the debt. Absent evidence of the same, I cannot deviate from the prenuptial agreement which states in relevant part "each party shall be solely responsible for debts incurred during the marriage, which are in their name alone." Additionally, Husband was given a mortgage deviation in his child support allocation, so his debt and payment toward the debt was not completely disregarded in the divorce proceeding. However, I find that he is not entitled to receive the mortgage payments as a reduction in the value of the home pursuant to the prenuptial agreement.

(Trial Court Opinion Regarding Husband's Issues, filed 11/30/23, at 4-5) (internal footnotes and record citation omitted).[4]

Despite Husband's arguments to the contrary, the Agreement limited marital debts to "those debts which are incurred after the date of marriage in the **joint names** of the parties." (Agreement at 8) (emphasis added). Considering this clear and unequivocal provision, we cannot say that the court committed an error of law or abuse of discretion by emphasizing the fact that Wife did not sign the mortgage note. *See Lewis, supra*; *Ramalingam, supra*. Therefore, Husband is not entitled to relief on his first claim.

In his second issue, Husband asserts that a divorce court must make appropriate credibility determinations and find an equitable solution when parties provide competing valuations for marital assets. Husband maintains

_____

[4] The court addressed the parties' issues by filing separate Rule 1925(a) opinions on November 30, 2023.

- 9 -

that the court "made no credibility determinations" regarding the parties' real estate appraisers, and the court simply split the difference between the competing appraisals to determine the value of the marital residence. (Husband's Brief at 13). Husband argues that the court erred in this regard because the report from Wife's expert, Andrew Yoder, was flawed. Specifically, Husband complains that Mr. Yoder relied on only three comparable sales, two of which involved homes in a different school district over two miles away. Moreover, "[o]nly one of Mr. Yoder's comparable sales is a stone colonial like" the marital residence.[5] (**Id.** at 15). Husband concludes that the trial court committed reversible error by giving equal weight to both experts' reports and splitting the difference in their respective appraisals. We disagree.

"[I]t is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." **Childress v. Bogosian**, 12 A.3d 448, 455 (Pa.Super. 2011).

> The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When

---

[5] In addition to pointing out the purported flaws in Mr. Yoder's report, Husband praises the methods employed by his own expert, Matthew Barone. Among other things, Husband emphasizes that Mr. Barone is based in the vicinity of the marital residence, he utilized five comparable sales, and his estimate was corroborated by the sales history of the marital residence. (**See** Husband's Brief at 13-14).

- 10 -

determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property.

*Id.* at 456 (internal citations and quotation marks omitted). "Additionally, the court may reject evidence offered by both parties in favor of its own valuation method." *Verholek v. Verholek*, 741 A.2d 792, 796 (Pa.Super. 1999) (*en banc*), *appeal denied*, 563 Pa. 665, 759 A.2d 388 (2000).

Instantly, the court made the following findings of fact regarding the value of the marital residence:

> Wife's expert, Andrew Yoder, valued the property at $845,000 and Husband's expert, J. Matthew Barone, valued the property at $625,000.
>
> Both experts testified that the overall condition of the marital residence was good and that the location of the home in Upper St. Clair was desirable as it has an excellent school district and access to good shopping areas and other amenities.
>
> Both acknowledged that the home is unique. It is the oldest home in Upper St. Clair, built in 1806, made of stone from the property with an added log addition in the 1840s. The home sits on 1.6 acres.
>
> **I found that both experts provided assistance in establishing the fair market value of the marital home**, but I find Mr. Yoder's value to be a bit high and Mr. Barone's to be a bit low. I find that the value of the marital property falls somewhere in between. Accordingly, I assess the current fair market value of the property at $735,000.[2]
>
> ___
>
> [2] *See Aletto v. Aletto*, 537 A.2d 1383, 1389 (Pa.Super. 1988) ("The trial court act[ed] within its discretion in assigning equal weights to the testimony of two experts and averaging the two figures to arrive at an estimated fair market value of the marital home.").

(Amended Findings of Fact at ¶¶18-21) (emphasis added).

Here, we disagree with Husband's assertion that the court made no credibility determinations. To the extent Husband suggests that the court needed to reject Mr. Yoder's appraisal in its entirety, Husband ignores the well-established principle that a court may accept all, part, or none of the evidence presented. **See Childress, supra**. Ultimately, the court relied on the appraisals supplied by the parties in determining the value of the marital residence, and we decline to interfere with its credibility determinations in this regard. **Id.** Consequently, Husband is not entitled to relief on his final issue.

In her first issue, Wife reiterates that the parties waived equitable distribution in the Agreement. Wife cites to the trial court's Rule 1925(a) opinion for the proposition that the court recognized the parties' waiver of equitable distribution. Despite the court's recognition of the Agreement, Wife insists that the court improperly relied upon equitable distribution factors to justify its ruling that Husband could make two payments to Wife for her portion of the marital residence. Wife argues that the Agreement is subject to the rules of construction applicable to all contracts. "Because the [Agreement] contains no specific provision allowing for judicial modification of its terms, the trial court has no power or authority to add new terms or conditions." (Wife's Brief at 19). Moreover, Wife invokes the doctrine of *expressio unius*

*est exclusio alterius*[6] to posit that the court's invocation of the equitable distribution factors set forth in 23 Pa.C.S.A. § 3502 "is precluded where equitable distribution is disclaimed in the prenuptial contract." (**Id.** at 20). Wife concludes that the court erred by directing Husband to make two payments to Wife, and this Court must remand the matter with instructions that Husband immediately pay $367,500.00 to Wife for her portion of the marital residence. We disagree.

"Equitable distribution is merely a division of the marital property of each spouse." **In re Ware**, 814 A.2d 725, 738 (Pa.Super. 2002). "In the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require." **Schenk v. Schenk**, 880 A.2d 633, 639 (Pa.Super. 2005). "Equitable distribution does not presume an equal division of marital property and the goal of economic justice will often dictate otherwise.... We look at the distribution as a whole, in light of a trial court's overall application of the factors enumerated at 23 Pa.C.S.A. § 3502(a)[.]" **Id.** (quoting **Mercatell v. Mercatell**, 854 A.2d 609, 612 (Pa.Super. 2004)). Nevertheless, "an antenuptial agreement waiving rights to equitable distribution … under the

_____

[6] "The maxim, *expressio unius est exclusio alterius*, establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions. The maxim is one of longstanding application, and it is essentially an application of common sense and logic." **Commonwealth v. Ostrosky**, 866 A.2d 423, 430 (Pa.Super. 2005), *affirmed*, 589 Pa. 437, 909 A.2d 1224 (2006) (internal citation and quotation marks omitted).

Divorce Code is presumed valid and will be given effect by our courts unless the contesting party can show that the proponent spouse failed to make a full and fair disclosure of his or her financial worth at the time the agreement was executed." *Karkaria v. Karkaria*, 592 A.2d 64, 71 (Pa.Super. 1991).

Further, we reiterate that prenuptial agreements are governed by contract law. *See Holz, supra*. "[N]ot every term of a contract must always be stated in complete detail." *Nicholas v. Hoffman*, 158 A.3d 675, 694 (Pa.Super. 2017) (quoting *Helpin v. Trustees of University of Pennsylvania*, 969 A.2d 601, 610-11 (Pa.Super. 2009)). "Where an essential term is missing or not clearly expressed, the court may infer the parties' intent from other evidence and impose a term consistent with it." *Id.* (internal quotation marks omitted). "A court may imply a missing term in a parties' contract only when it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." *Glassmere Fuel Service, Inc. v. Clear*, 900 A.2d 398, 403 (Pa.Super. 2006) (quoting *Soloman v. U.S. Healthcare Systems of PA, Inc.*, 797 A.2d 346, 350 (Pa.Super. 2002), *appeal denied*, 570 Pa. 688, 808 A.2d 573 (2002)).

Instantly, the trial court conceded that the parties waived equitable distribution in the Agreement. (*See* Trial Court Opinion Regarding Wife's Issues, filed 11/30/23, at 4). The court also agreed that, pursuant to the Agreement, Wife is entitled to fifty percent of the fair market value of the marital residence. (*Id.* at 5). Nevertheless, the court found that the

Agreement was silent on "when and how" Husband should pay Wife:

> In this case, the parties did not specify in their prenuptial agreement to pay their share of marital property in two payments, so there was nothing for me to enforce.
>
> *   *   *
>
> In this case, after considering Husband's previous marriage, the child custody arrangements, and Wife's non-marital assets, I find that ordering installment payments under the prenuptial agreement will not cause a wrongous delay in the possession of her money or result in extreme prejudice. Wife will receive her 50% share of the marital property pursuant to the prenuptial agreement without disrupting the stability in the lives of Husband and their Child who continue to reside in the home.

(*Id.* at 5, 7).

Based upon our review of the record, we cannot say that the court ran afoul of the Agreement by engaging in equitable distribution. *See Schenk, supra*; *In re Ware, supra*. Rather than dividing marital property as the equities might have required, the court implied a missing term where the Agreement did not otherwise specify when and how a party would make payment to their spouse in the event of a divorce. (*See* Agreement at 8). Further, the court directed Husband to make two payments to Wife to create **as little disruption as possible for Child**, who continued to reside in the marital residence. Under the circumstances of this divorce action, which came on the heels of a hotly contested custody battle, the court correctly implied a term to keep Child's best interests at the forefront. *See Nicholas, supra*; *Glassmere Fuel, supra*. Thus, Wife is not entitled to relief on her first claim.

In her second issue, Wife relies upon 42 Pa.C.S.A. § 8101 for the proposition that she is entitled to post-judgment interest on the award of $367,500.00 for her share of the marital residence. Wife reasons that the purpose of awarding post-judgment interest is "to compensate her for the loss of the use of her own money," and "the interest award is an incentive to [Husband] to pay up promptly." (Wife's Brief at 21, 22). Wife concludes that this Court must reverse the order distributing the marital property and remand for an amended order awarding interest to Wife on the $367,500.00 judgment. We disagree.

The Judicial Code provides for interest on judgments as follows:

### § 8101. Interest on judgments

Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S.A. § 8101.

Interest has been defined to be a compensation allowed to the creditor for delay of payment by the debtor, and is said to be impliedly due whenever a liquidated sum of money is unjustly withheld. And again,—but rather by way of amplification,—it is said to be a legal and uniform rate of damages allowed in the absence of any express contract, when payment is withheld after it has become the duty of the debtor to discharge his debt.

***School Dist. of City of Carbondale v. Fidelity & Deposit Co. of Maryland***, 346 Pa. 491, 492, 31 A.2d 279, 280 (1943) (internal citations and quotation marks omitted).

Instantly, the court entered a judgment in Wife's favor: "Judgment is entered against [Husband] in favor of [Wife] in the amount of $367,500 for distribution of the marital residence located at 170 Seeger Road[.]" (Order, entered 5/3/23, at ¶2). The court also provided instructions regarding the amount and timing of Husband's payments, "with the first payment of $183,750 to be made … by September 14, 2024. The second payment of $183,750 shall be made within one year after the first payment is made." (*Id.* at ¶3). Under these terms, Husband was not required to make his first payment until over a year after the court entered the judgment in Wife's favor. Thus, any request for interest is premature at this juncture, as Husband has yet to withhold a payment.[7] *See School Dist. of Carbondale, supra*. Accordingly, Wife is not entitled to relief on her final claim, and we affirm the divorce decree.

Decree affirmed.

---

[7] After the parties filed their notices of appeal, Husband filed a motion to stay enforcement of the May 3, 2023 order. On August 13, 2024, the court granted Husband relief. Wife subsequently filed an application for relief in this Court seeking to vacate the trial court's August 13, 2024 order. This Court denied Wife's request by *per curiam* order on January 2, 2025.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/30/2025